UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE ESTATE OF JULIUS GRAY and
JEANINE GRAY,

       Plaintiffs,                        Case No. 11-12354

v.                                      Honorable Patrick J. Duggan

FIFTH THIRD MORTGAGE-MI LLC, a
Delaware limited liability company, and
FIFTH THIRD MORTGAGE COMPANY,
an Ohio company,

       Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 30, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On May 9, 2011, Jeanine Gray and the Estate of Julius Gray ("the Estate") filed this

suit in Oakland County Circuit Court, alleging that Defendants Fifth Third Mortgage-MI,

LLC and Fifth Third Mortgage Company (collectively, "Fifth Third") improperly refused

to modify a mortgage loan and violated several Michigan statutes while foreclosing on real

property located in Northville, Michigan.  Before the Court is Fifth Third's motion for

summary judgment, filed on June 22, 2011 pursuant to Federal Rule of Civil Procedure 56.

Plaintiffs have also filed motions to amend their Complaint and to extend discovery.  The

Court heard oral argument on September 22, 2011.  For the reasons stated below, the

Court grants Defendants' motion in part and grants Plaintiffs' motions.

## I. Factual and Procedural Background

Julius and Jeanine Gray purchased a home in Northville, Michigan on June 12, 2007, taking title to the property as tenants by the entirety. To finance this purchase, Julius Gray signed a promissory note to obtain a $1 million adjustable rate loan from Fifth Third Mortgage-MI, LLC. *See* Pls.' Resp. Br. Ex. C. The Grays granted the lender a mortgage on the property as security for the loan. *See id.*

In March 2009, Julius Gray lost his job with an automotive-related manufacturer and became distraught about his financial situation. He committed suicide on April 3, 2009, and the proceeds of a $1 million life insurance policy were place into a trust for his wife and two daughters. Apparently, Mrs. Gray's trust payments and Social Security benefits were initially delayed. She therefore borrowed money to make the mortgage payments and tried to obtain a modification of the loan. Gray Aff. ¶¶ 9-10. The lender allegedly refused to discuss the loan with her, as she was not an obligor of the note, and suggested that if she wanted to speak with someone, she should stop making payments. *Id.* ¶¶ 10-11.

Mrs. Gray stopped making the loan payments, and the lender apparently responded by referring the loan to its foreclosure counsel, Trott & Trott, P.C. ("Trott"). In a letter to Mrs. Gray dated March 9, 2010, Trott explained that the loan was in default and that she could request a meeting with an agent designated to make loan modification agreements. Defs.' Br. Ex. I. A notice of right to mediation was published that same day pursuant to Michigan Compiled Laws § 600.3205a. *See* Defs.' Br. Ex. H. On March 17, 2010, an assignment of the mortgage from Fifth Third Mortgage-MI, LLC to Fifth Third Mortgage

2

Company was recorded.  *See* Defs.' Br. Ex. C.  The assignment was dated March 8, 2010.

Mrs. Gray requested to meet regarding loan modification, and Trott sent a financial package to her on March 25, 2010 to be completed in order to determine her eligibility for loan modification.  After receiving no response, Trott sent a follow-up letter on April 26, 2010, threatening to begin foreclosure proceedings on June 7, 2010 if this documentation was not received.

By this time, Mrs. Gray had engaged The Short Sales Group, LLC ("SSG") to assist her with the loan modification.  On May 4, 2010, SSG sent a letter to Trott requesting a modified monthly payment of $4,500 for a 40-year loan term.  On the enclosed Fifth Third Bank Financial Workout Sheet, Mrs. Gray claimed monthly income of $4,100 under the category of "disability" and monthly expenses of approximately $10,000, excluding the primary mortgage payment.  *See* Defs.' Br. Ex. M.  The Financial Workout Sheet did not claim any other income sources.  Plaintiffs assert that at that time, Mrs. Gray had monthly income of about $5,000 from a structured settlement and $4,500 from the trust in addition to $4,100 in Social Security benefits, giving her total monthly income of about $13,600.  The loan modification meeting was held on May 26, 2010.  Mrs. Gray subsequently paid approximately $70,000 for renovations to the home's lower level and swimming pool, apparently in the belief that these improvements would make the home more enjoyable and improve its resale value.  Gray Aff. ¶¶ 27-30.  Mrs. Gray claims that she undertook these renovations in reliance on statements made to her by Daniel Flick, a Fifth Third Loss Mitigation Specialist, indicating that she would be approved for a loan modification.  *Id.*

In a letter dated July 7, 2010, Trott notified Mrs. Gray that "[b]ased on the financial

information you provided, the lender cannot offer you a loan modification at this time." Defs.' Br. Ex. N.  The letter further stated that foreclosure proceedings would continue as permitted by Michigan law.  *Id.*  The "Qualification Sheet" accompanying this letter stated that the proposed monthly housing payment of $4,122 was 101% of Mrs. Gray's stated monthly income of $4,068.[1]

A notice of foreclosure was published in the Oakland County Legal News for four consecutive weeks beginning on July 13, 2010.  *See* Defs.' Br. Ex. F at 3.  The property was posted with a notice of foreclosure on July 15, 2010.  The sheriff's sale was scheduled for August 10, 2010, but was later adjourned to September 7, 2010 to allow for additional time to verify Mrs. Gray's income.  According to e-mail correspondence between Flick and Plaintiffs' counsel, Mrs. Gray had not provided documentation of the structured settlement and trust income as of the morning of September 7, 2010.  *See* Pls.' Br. Ex. I at 2.  Flick indicated that the sale could not be adjourned, but noted that Mrs. Gray could still redeem the property within the redemption period.  *Id.* at 1.  Plaintiffs' counsel indicated that he would file a bankruptcy petition on behalf of the Estate to prevent the sheriff's sale. He filed a chapter 11 petition on behalf of the Estate in the Bankruptcy Court for the Eastern District of Michigan less than an hour later, at 9:56 a.m.[2]  The sheriff's sale took place at 10:00 a.m., as scheduled, and Fifth Third Mortgage Company purchased the

---

[1] For loan modifications, Michigan statute targets a ratio of housing-related debt to the borrower's gross income of 38% or less.  Michigan Compiled Laws § 600.3205c(1)(a).

[2] According to Plaintiffs, the bankruptcy petition was filed by the Estate in an effort to preserve Mrs. Gray's credit, which would have suffered if she had filed a petition.

property for $850,000.

The United States Trustee subsequently moved to dismiss the bankruptcy petition, arguing that the Estate was ineligible to file a petition under the Bankruptcy Code.  The bankruptcy court granted this motion at a hearing held on October 12, 2010.  Fifth Third moved for an order annulling the automatic stay *nunc pro tunc*, effectively validating the sheriff's sale that had already occurred.  The bankruptcy court granted this motion in an order dated November 18, 2010, annulling any claimed protections of the automatic stay from the inception of the chapter 11 bankruptcy case.  *See* Defs.' Br. Ex. V.  This order has since been affirmed on appeal.  *In re Estate of Gray*, No. 10-14412, 2011 U.S. Dist. LEXIS 100207 (E.D. Mich. Sep. 6, 2011).

Because the sheriff's sale took place on September 7, 2010, the six-month statutory redemption period was to expire on March 7, 2011.  On that date, however, Mrs. Gray filed a chapter 13 petition in the bankruptcy court, extending the redemption period by sixty days to May 6, 2011.  *See* 11 U.S.C. § 108(b).  Fifth Third filed a motion to lift the automatic stay, and the bankruptcy court granted this motion on May 5, 2011.[3]

Plaintiffs filed this action in Oakland County Circuit Court the following day.  In their Complaint, Plaintiffs alleged a variety of defects in the foreclosure process.  Plaintiffs sought an order requiring Fifth Third to appear and show cause why the sheriff's sale should not be set aside or converted into a judicial foreclosure pursuant to Michigan Compiled Laws § 600.3205c(8).  Plaintiffs also filed a motion for a temporary restraining

---

[3] Mrs. Gray's chapter 13 bankruptcy case was subsequently dismissed on June 7, 2011 pursuant to a motion made by the United States Trustee.

order staying the redemption period.

Oakland Circuit Judge Denise Langford Morris entered the requested temporary restraining order on May 9, 2011, purporting to stay the redemption period. Judge Langford Morris further ordered Defendants to appear at a hearing on May 11, 2011 to show cause why a preliminary injunction setting aside the sheriff's sale and prohibiting foreclosure should not be entered during the pendency of the case. It appears that at this hearing, Judge Langford Morris extended the temporary restraining order. Defendants removed the suit to this Court, and moved for summary judgment pursuant to Rule 56. On September 1, 2011, Plaintiffs sought leave to amend their Complaint and filed a motion to extend discovery.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Defendants' Motion for Summary Judgment

In their Complaint, Plaintiffs assert that Defendants wrongfully foreclosed on the home and request that the Court set aside the sheriff's deed (Counts I and II). Plaintiffs also assert claims of breach of contract (Count III) and fraud (Count IV). Defendants argue that they must be granted summary judgment with respect to these claims.

**A. Wrongful Foreclosure Claims**

**1. Standing to Challenge the Foreclosure Sale**

Defendants argue that Plaintiffs lack standing to challenge the foreclosure sale because the statutory redemption period has expired.  Pursuant to Michigan law, once the redemption period has expired, the former owner's rights in and title to the property are extinguished.  *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187, 4 N.W.2d 514, 517 (Mich. 1942); *see also* Michigan Compiled Laws § 600.3236.  At that point, the former owner loses standing to assert claims with respect to the property.  *Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 284950, 2009 Mich. App. LEXIS 1209, at *3 (Mich. Ct. App. May 28, 2009) (unpublished opinion).  The filing of a lawsuit does not toll the redemption period.  *Id.*  The sheriff's sale occurred on September 7, 2010.  Thus, the six-month statutory redemption period was to expire on March 7, 2011, until Mrs. Gray's bankruptcy petition extended it by sixty days to May 6, 2011.  Although Judge Langford Morris issued a temporary restraining order purporting to stay the redemption period, her order did not issue until May 9, 2011.  The order therefore could not stay the redemption period, which had already expired a few days earlier.

Plaintiffs seek equitable tolling of the redemption period until the date upon which the temporary restraining order was entered.  "'The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.'"  *Overton*, 2009 Mich. App. LEXIS 1209, at *3 (quoting *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (Mich.

Ct. App. 1969)).  Plaintiffs have alleged two irregularities in the foreclosure process that they believe justify tolling.

First, Plaintiffs note that the assignment of the mortgage to Fifth Third Mortgage Company was not recorded before the notice regarding loan modification was published. They argue that the loan modification notice begins the foreclosure process, and thus, Fifth Third Mortgage Company improperly instituted foreclosure proceedings before it became the record holder of the mortgage.  *See Davenport v. HSBC Bank USA*, 275 Mich. App. 344, 347, 739 N.W.2d 383, 384 (Mich. Ct. App. 2007) ("[O]ne who is not the record holder of a mortgage may not foreclose the mortgage under MCL 600.3204.").  Plaintiffs take a broad view of what constitutes foreclosure proceedings, but this view conflicts with the relevant statute, which provides:

> A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(1) if 1 or more of the following apply:
>
> (a) Notice has not been mailed to the mortgagor as required by section 3205a.
> (b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.
> (c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.
> (d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.
> (e) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.
> (f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under

section 3205c(7).

Michigan Compiled Laws § 600.3204(4). Plaintiffs' suggested interpretation of the statute is illogical. If the lender begins foreclosure by providing the borrower with the required loan modification notices, it would be impossible to comply with the statute's command that "[a] party shall not commence proceedings . . . to foreclose a mortgage" until after providing the notice. *Id.* § 600.3204(4)(a). By requiring the loan modification process to occur before foreclosure proceedings, the statute clearly recognizes that the modification process is not a part of those proceedings. Fifth Third Mortgage Company recorded the assignment of the mortgage on March 17, 2010, long before the July 13, 2010 publication of the first notice of foreclosure. Plaintiffs have therefore failed to demonstrate a violation of Michigan law.

As their second basis for equitable tolling, Plaintiffs speculate that Fifth Third Mortgage Company may not have had an interest in the note at the time that it instituted foreclosure proceedings. Plaintiffs assert that if Fifth Third Mortgage Company lacked an interest in the note, the foreclosure was void *ab initio*. *See Residential Funding Co. v. Saurman*, No. 290248, 2011 Mich. App. LEXIS 719, at *27 (Mich. Ct. App. Apr. 21, 2011). Despite the conclusion of discovery in this case, Plaintiffs seek additional discovery to attempt to determine when the note was endorsed to Fifth Third Mortgage Company. Michigan law requires a "clear showing of fraud or irregularity" in order to justify equitable tolling of the statutory redemption period, and the Court believes that Plaintiffs' suspicion is insufficient to satisfy that standard. It is not the purpose of equitable tolling to allow parties to test any and all possible theories that may breathe new

10

life into their case.

The Court also believes that the particular facts of this case weigh against equitably tolling the statutory redemption period.  Plaintiffs' counsel has filed two bankruptcy petitions in last-minute attempts to stall the foreclosure sale and extend the statutory redemption period.  Both of these petitions have since been dismissed.  Plaintiffs filed this action approximately eight months after the sheriff's sale, on the final day of the extended redemption period, in what appears to be an attempt to further frustrate Fifth Third.  In this light, Plaintiffs' efforts cannot be characterized as a diligent exercise of rights; instead, they seem calculated only to delay the lender's exercise of remedies.  Given the lack of evidence supporting Plaintiffs' claims, these are not the sort of circumstances under which the Court believes that an equitable extension of the redemption period can be justified. The redemption period expired, and Plaintiffs therefore lack standing to assert claims with respect to the property.  *Overton*, 2009 Mich. App. LEXIS 1209, at *3.

### 2. Violations of Michigan Statute

Even if Plaintiffs had standing to assert their claims of defective foreclosure, the Court concludes that several of these claims lack merit.  Plaintiffs first contend that the sale must be set aside because Defendants violated Michigan Compiled Laws § 600.3220 by providing "robo-signed" notices adjourning the foreclosure sale to September 7, 2010. This claim fails for two reasons.  A plaintiff asserting that a foreclosure sale must be set aside due to defective notice of adjournment must show that she has suffered prejudice from the defective notice.  *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 503, 739 N.W.2d 656, 662 (Mich. Ct. App. 2007) (citing *Jackson Inv. Corp. v. Pittsfield Prods.,*

*Inc.*, 162 Mich. App. 750, 755, 413 N.W.2d 99, 101 (Mich. Ct. App. 1987)); *see also*

*Worthy v. World Wide Fin. Servs.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004).  Plaintiffs

have not argued that they were prejudiced by the adjournment of the foreclosure sale from

August 10, 2010 to September 7, 2010, and the Court cannot see how they were injured by

this delay.  Plaintiffs have also failed to introduce any evidence supporting their claim that

the notices in question were "robo-signed."  Plaintiffs point to the affidavit of Bruce

Rubinfeld, legal assistant to Plaintiffs' counsel, but this affidavit only establishes that it

might be possible for a party to obtain signatures on backdated notices of adjournment; it

fails to allege any defect relating to the adjournment notices at issue in this case.  *See* Pls.'

Resp. Br. Ex. L.  For a claim to survive a motion for summary judgment, the non-movant

must present more than a "scintilla" of evidence.  *Liberty Lobby*, 477 U.S. at 252, 106 S.

Ct. at 2512.  The mere possibility that the adjournment notices were "robo-signed" is

insufficient to establish a genuine dispute of material fact.

Plaintiffs argue that the sheriff's sale must be set aside for failure to grant a loan

modification pursuant to Michigan Compiled Laws § 600.3205c.  Plaintiffs have failed to

establish, however, that Mrs. Gray qualified for the modification.  Fifth Third required

documentation of income and apparently rejected the proposed loan modification for this

reason.  Plaintiffs have not shown that Mrs. Gray provided documentation of her income

to Fifth Third before the sheriff's sale occurred.  Michigan statute defines certain

characteristics of the loan modification process lenders must use, *see* Michigan Compiled

Laws § 600.3205c(1), but it does not appear to require modification of a loan without

documentation of the borrower's income.  The Court cannot conclude that Defendants

12

were required to modify the loan.

Defendants argue that they must be granted summary judgment on Plaintiffs' claim under Michigan Compiled Laws § 600.3205c(8) because Plaintiffs failed to convert the foreclosure by advertisement to a judicial foreclosure during the statutory redemption period. The statute does not allow the Court to set aside a completed foreclosure sale. It provides:

> If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure.

Michigan Compiled Laws § 600.3205c(8). The statute plainly requires the borrower to seek this remedy prior to the completion of the foreclosure sale, as it merely converts the proceeding into one of judicial foreclosure. A borrower may not challenge a completed foreclosure sale under this statute. *Stein v. U.S. Bancorp*, No. 10-14026, 2011 U.S. Dist. LEXIS 18357, at *28-29 (E.D. Mich. Feb. 24, 2011). Because the foreclosure sale in this case was completed before Plaintiffs filed suit, their claim fails as a matter of law.

### 3. Violation of the Automatic Stay

Plaintiffs contend that Defendants violated the automatic stay by proceeding with the foreclosure sale after the Estate's filing of a chapter 11 petition. The Court cannot agree, as there is no indication that the home became property of the bankruptcy estate so as to fall within the protection of the automatic stay. The stay prohibits the enforcement of a lien against "property of the debtor" or "property of the estate." 11 U.S.C. § 362(a)(3)-(5). The estate is comprised of "all legal or equitable interests of the debtor in property as of

13

the commencement of the case." 11 U.S.C. § 541(a)(1). A debtor's interest in property is defined by state law. *In re White*, 851 F.2d 170, 173 (6th Cir. 1988). Under Michigan law, the Estate of Julius Gray held no interest in the home. It is undisputed that Julius and Jeanine Gray, as husband and wife, held title to the home as tenants by the entirety. "A tenancy by the entirety is a type of concurrent ownership in real property that is unique to married persons." *Tkachic v. Mandeville*, 487 Mich. 38, 46, 790 N.W.2d 260, 265 (Mich. 2010). In such a tenancy, "both spouses have a right of survivorship, meaning that, in the event that one spouse dies, the remaining spouse automatically owns the entire property." *Id.* at 47-48, 790 N.W.2d at 265. "Thus, entireties properties are not part of a decedent spouse's estate." *Id.* at 47, 790 N.W.2d at 265. Upon Julius Gray's death, title vested in Jeanine Gray, rather than Julius Gray's estate. As Julius Gray's estate had no interest in the home, the home did not become part of the bankruptcy estate created by the filing of the petition. The stay applied only to property of the bankruptcy estate, *see* 11 U.S.C. § 362(a)(3)-(5), and therefore did not bar the sheriff's sale. Furthermore, the bankruptcy court's November 18, 2010 order vacated the stay *nunc pro tunc*, annulling any claimed protections of the automatic stay from the inception of the chapter 11 bankruptcy case. *See* Defs.' Br. Ex. V. Under this order, even if the home had been a part of the bankruptcy estate, the stay's protections did not render the foreclosure improper.

## B. Breach of Contract Claim

Plaintiffs assert that Defendants breached a contract with Mrs. Gray to modify the loan. Compl. ¶¶ 45-46. This claim lacks merit for failure to satisfy the statute of frauds, which provides:

An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Michigan Compiled Laws § 566.132(2). The statute unambiguously requires that a promise to modify a loan must be in writing in order to be enforceable against a financial institution. Plaintiffs seek to enforce a promise to modify a mortgage loan, but have provided no written evidence of the alleged promise. The Court accordingly grants Defendants summary judgment with respect to the breach of contract claim.

**C. Fraud / Misrepresentation Claim**

Plaintiffs assert that the foreclosing lender, Fifth Third Mortgage Company, falsely represented to Mrs. Gray that the loan would be modified. Compl. ¶ 48. They claim that in reliance upon these representations, Mrs. Gray completed the renovations of the home at a significant cost. *Id.* ¶ 49. This claim fails for two reasons. First, it seeks to enforce a promise to modify a loan. As noted above, the statute of frauds requires such a promise to be in writing and signed by the financial institution. Second, a party claiming fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint should allege the time, place, and content of the misrepresentation on which the party relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury

15

resulting from the fraud. *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 518 (6th Cir. 2009). Plaintiffs have failed to point to any definitive promise to modify the loan, and only cite Mrs. Gray's belief that she qualified for modification. Absent such a statement, Plaintiffs' fraud claim fails for lack of particularity.

### IV. Plaintiffs' Motion to Amend

Plaintiffs have filed a motion for leave to amend their Complaint. Federal courts have discretion in granting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* In the absence of any apparent or declared reason, such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment, leave to amend should be freely given. *Id.*

Plaintiffs have not attached a proposed Amended Complaint to their motion, as Eastern District of Michigan Local Rule 15.1 requires, but their response to Defendants' motion for summary judgment makes clear that they wish to add a claim for slander of title.[4] "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Inv. Group v. Gitler*, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998) (citing *Sullivan v. Thomas Org., P.C.*, 88 Mich. App. 77, 82, 276 N.W.2d 522, 525 (Mich. Ct. App. 1979)).

---

[4] The Court notes that the Rule states that failure to comply is not grounds for denial of the motion to amend.

The Court concludes that amendment would be futile in this case.  Plaintiffs have failed to present any evidence suggesting that Defendants violated Michigan foreclosure laws, despite having ample opportunity for discovery.  Absent such evidence, the Court cannot conclude that Defendants maliciously published false statements disparaging Mrs. Gray's property rights.  Furthermore, the Court concludes that amendment wold unduly delay resolution of this case, prejudicing Fifth Third.  As noted above, Plaintiffs have repeatedly frustrated Fifth Third's attempts to exercise its rights in the property, and the Court does not believe that further delay is justified under these circumstances.

### V. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend the Complaint is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion to extend discovery is **DENIED AS MOOT**.

> s/PATRICK J. DUGGAN
> UNITED STATES DISTRICT JUDGE

Copies to:

Jack B. Wolfe, Esq.
Matthew B. Theunick, Esq.

17